UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CINDY K. CHAN and HUNG P. WONG,          :
                                                            :
                              Plaintiffs,          :
                                                            :
      -against-                                     :            13 Civ. 4724 (HB)
                                                            :
BARBARA SMITH and CLARENCE ALVIN    :            OPINION & ORDER
DANIEL GASBY,
                                                            :
                              Defendants.      :
------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

Plaintiffs Cindy Chan and Hung Wong bring this action seeking specific performance of the contract of sale for a cooperative apartment in midtown Manhattan.  For the reasons stated below, Defendants' cross motion to dismiss the amended complaint is GRANTED.  Plaintiffs' motion for a preliminary injunction is DENIED as moot.

## BACKGROUND

In February 2013, Plaintiffs agreed to purchase apartment 35-A at 200 Central Park South in New York City for $4.89 million.  Plaintiffs' contract with Defendants Barbara Smith and Clarence Alvin Daniel Gasby, the sellers, expressly provided that sale was contingent upon "the unconditional consent" of the Park South Tenants Corporation (the "Corporation"), the cooperative housing corporation.  (Am. Compl. Ex. A ¶¶ 1.6, 6.1.)  Decisions for the Corporation were made by the cooperative's Board of Directors (the "Board").  (*See* Am. Compl. ¶¶ 19, 21.)  Sale of the apartment was to close "on or about April 2, 2013 ('Scheduled Closing Date') at 2:00 P.M."  (*Id.* ¶ 1.15.)  But "[i]f the [Board] ha[d] not made a decision on or before the Scheduled Closing Date, the Closing [would] be adjourned for 30 business days for the purpose of obtaining such consent."  (*Id.* ¶ 6.3.)

Under the contract, both Plaintiffs and Defendants had the right to cancel the sale if the Board did not consent to that sale.  First, if the Board failed to consent by the adjourned date, either party had the right to "cancel the Contract by Notice, provided that the [Board's] consent is not issued before such Notice of cancellation is given."  (*Id.*)  Second, either party could also

1

"cancel this Contract by Notice" at any time if the Board refused consent. (*Id.*) In other words, without consent from the co-op board, there was no deal.

Plaintiffs submitted their application to the Board on February 25, 2013. Then, on May 1, the Board rejected Plaintiffs' application. On May 30, Defendants sought to refund Plaintiffs' down payment, noting that the sale of the apartment "did not receive board approval." (*Id.* Ex. D.) On the same day that Defendants attempted to return the down payment, Plaintiffs' attorney contacted the Board to seek reconsideration. And on June 3, the Board agreed to reconsider its rejection. Plaintiffs then returned the down payment to Defendants on June 5, advising that "Purchasers have made an appeal to the Corporation . . . requesting that their application be reconsidered by the full Board." (*Id.* Ex. E.) Nevertheless, on June 10 Defendants again tried to return Plaintiffs' down payment, this time invoking expressly their right to cancel the transaction "per paragraph 6.3 of the Contract of Sale." (*Id.* Ex. F.) And as explained above, paragraph 6.3 permitted either party to cancel the contract "if [the Board's] consent is not given by such adjourned date" or "if such consent is refused at any time." (*Id.* Ex. A ¶ 6.3.) According to the amended complaint, on June 14 the Board reversed itself and approved Plaintiffs' application. (*Id.* ¶ 43.) And on June 18, Plaintiffs notified Defendants of this approval. But Defendants still refused to sell or close under the contract.

## DISCUSSION

I turn first to Defendants' cross motion to dismiss. "A court should construe a contract as a matter of law only if the contract is unambiguous on its face." *Banks v. Correctional Servs. Corp.*, 475 F. Supp. 2d 189, 195 (E.D.N.Y. 2007) (citing *Metro. Life Ins. Co. v. RJR Nabisco Inc.*, 906 F.2d 884, 889 (2d Cir. 1990)). And in breach of contract actions, "the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim." *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 407 (S.D.N.Y. 2011) (quoting *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297–98 (S.D.N.Y. 2009)). The contract at issue here gave either party the right to cancel the contract (1) at any time after the Board refused consent or (2) if the Board had not made a decision by May 14, 2013—30 business days after the April 2 "Scheduled Closing Date." By granting different rights for when consent is refused as opposed to when "consent is not given by" the deadline, the contract envisions cancellations even while the Board's decision was still pending. (*See* Am. Compl. ¶ 41.) And here, the parties do not dispute that by June 10, the Board still had not given its

consent to the sale.  Thus, whether Plaintiffs had appealed the Board's initial denial or not is irrelevant.  Defendants' notice of cancellation on June 10—less than one month after the May 14 adjourned deadline—effectively cancelled the sale pursuant to the contract's express language.

Plaintiffs' attempts to inject ambiguity into the contract's language are unavailing.  *See Banks*, 475 F. Supp. 2d at 195 ("Contractual language 'whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation.'" (quoting *Metro. Life Ins. Co.*, 906 F.2d at 889)).  First, Plaintiffs argue that the use of the phrase "on or about" in reference to the closing date means that no firm closing date was established.  (*See* Am. Compl. Ex. A ¶ 1.15.)  Despite the contract's language spelling out that either party could cancel "if consent is not given" following adjournment of the closing for "30 business days," Plaintiffs urge that Defendants' right to cancel did not arise until they gave notice that time was of the essence.  Yet even if the contract's use of the phrase "on or about" suggests some flexibility in the actual closing date or time, the contract's language also states explicitly that "[t]he date scheduled for Closing is on or about April 2, 2013 ('Scheduled Closing Date') at 2:00 P.M."  (*Id.*)  The "Scheduled Closing Date" as used throughout the contract is therefore expressly defined as April 2, 2013 regardless whether the actual closing occurred on that date.

The contract as a whole also supports this reading.  *See Diamond Castle Partners IV PRC, L.P. v. IAC/Interactivecorp*, 82 A.D.3d 421, 422 (1st Dep't 2011) ("It is 'elementary' that 'clauses of a contract should be read together contextually in order to give them meaning." (quoting *HSBC Bank USA v. Nat'l Equity Corp.*, 279 A.D.2d 251, 253 (1st Dep't 2001))).  Indeed, the contract tied the "Scheduled Closing Date" not only to the time upon which Defendants could cancel but also to other dates in the contract.  For example, the contract required Plaintiffs to deliver a "Lien and Judgment search" to Defendants "not less than 10 calendar days prior to the Scheduled Closing Date."  (Am. Compl. Ex. A ¶ 15.1.) And as explained above, the contract envisions a thirty-day adjournment from the Scheduled Closing Date before Defendants' right to cancel arises.  (*Id.* ¶ 6.3.)

In light of these specific provisions, Plaintiffs' contention that the "Scheduled Closing Date" used throughout the contract was not a fixed date would if adopted contradict other language in the same contract.  To extend the "on or about" language in paragraph 1.15 so that it embraced the rest of the contract would render these specific date calculations a nullity.  *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor

contract interpretations that render provisions of a contract superfluous."). And given that the contract also contained an express cancellation right tied to these specific dates, Defendants' failure to notify Plaintiffs that time was of the essence before cancellation did not affect Defendants' right to cancel. *See Burns v. Bankruptcy Estate of Swyers*, No. 03 Civ. 0656, 2003 WL 23350110, at *2 (W.D.N.Y. Dec. 9, 2003) (lack of "time is of the essence" clause is "irrelevant" when party invokes an express cancellation clause); *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 160 (1990) (dismissing claim seeking specific performance where defendants canceled contract one day after contract expressly granted right to cancel).

Finally, neither the implied covenant of good faith and fair dealing nor the contract's language requiring that the parties cooperate suggest a different result. (*See* Am. Compl. Ex. A. ¶ 24.1.) Indeed, the implied covenant of good faith and fair dealing does not imply obligations "inconsistent with other terms of the contractual relationship." *Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341, 2009 WL 1054830, at *5 (S.D.N.Y. Apr. 17, 2009) (internal quotation marks omitted) (quoting *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 394–95 (2d Cir. 2002)). While Plaintiffs allege that Defendants did not submit certain materials that the Board had requested in February 2013, Plaintiffs do not claim that this delay affected the Board's consideration of Plaintiffs' application. (*See* Am. Compl. ¶¶ 16–20.) Thus, to the extent that Plaintiffs rely upon Defendants' alleged recalcitrance as supporting a breach of the implied covenant of good faith and fair dealing or their duty to cooperate, that conduct does not support specific performance. *See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("Causation is an essential element of damages in a breach of contract action.").

## CONCLUSION

I have considered the parties' remaining arguments and find them meritless. For the reasons stated above, Defendants' cross motion to dismiss is GRANTED. Plaintiffs' motion for a preliminary injunction is DENIED as moot and the temporary restraining order is vacated. The Clerk of Court is instructed to close all open motions, close this case, and remove it from my docket.

SO ORDERED.

Date: 9 | 19 | 13

New York, New York

HAROLD BAER, JR.
United States District Judge

4